IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMY RODENBERG,

                            Plaintiff,                                  OPINION & ORDER

    v.

                                                                                  13-cv-365-jdp

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                            Defendant.

---

        Plaintiff Amy Rodenberg seeks judicial review of a final decision of the Commissioner of Social Security finding her not disabled within the meaning of the Social Security Act. Plaintiff contends that remand is warranted because the Administrative Law Judge (ALJ) failed to give at least substantial weight to the opinions of three of her treating providers. The ALJ considered and credited much of the evidence from these three treating providers, and he considered as well three additional treating providers and four state agency sources. But the ALJ did not credit the opinions that her medical conditions would cause plaintiff to miss two or more days of work per month. Because the ALJ properly considered all the medical evidence provided to him, he did not err in discrediting the opinions about plaintiff's work absences. The court affirms the Commissioner's decision.

BACKGROUND

**A. Procedural Background**

        Plaintiff, born 1980, has suffered from back pain, affective disorders, anxiety, and obesity since 2008. She had worked as a cashier and a machine operator, but she has not worked since April 7, 2010, which is the date she alleges as the onset of her disability. On May 17, 2010, she filed claims for both disability benefits and supplemental security income.

Plaintiff's claims were denied initially on August 6, 2010, and on reconsideration on November 16, 2010. ALJ Thomas J. Sanzi held a hearing on September 16, 2011, at which plaintiff and vocational expert Spencer L. Mosley testified. Plaintiff's medical records were admitted without objection. The ALJ denied plaintiff's claims for disability benefits and supplemental security income in a November 14, 2011, written decision. Plaintiff's request for review was denied by the Appeals Council, making ALJ Sanzi's decision the final determination of the Commissioner. Plaintiff timely sought judicial review in this court on May 22, 2013.

**B. Relevant Medical Evidence**

Plaintiff alleges that she has been disabled since April 7, 2010. For purposes of plaintiff's disability insurance claim, she must establish disability by March 31, 2010, which is her date last insured. R. 11. At the hearing, plaintiff attempted to amend her onset date to December 14, 2009. In light of the ALJ's decision that plaintiff has not been disabled since April 7, 2010, the precise onset date is not critical.

Plaintiff alleges that beginning about 2008, she has suffered from back pain and a range of mental disorders, including: major depression, anxiety, fear of being alone, social phobia, fear of being hurt, paranoia, and extreme sensitivity. Her primary care provider left her clinic in November of 2008, and apparently she went without medical care for significant portions of 2008 and 2009. But between 2009 and 2011, she saw six physicians or therapists who provided records considered by the ALJ.

Yannick Grenier, MD, a neurosurgeon, diagnosed plaintiff with a herniated disc and performed a microdiscectomy on December 30, 2009. Grenier prepared a Lumbar Spine Residual Functional Capacity Questionnaire on June 1, 2010. R. 285-89. Grenier opined then

that plaintiff would be absent from work more than four days per month. The ALJ gave Grenier's opinion little weight, which is one of the ALJ's determinations that plaintiff challenges.

Follow-up care was provided by Jeffrey J. Derr, MD. Derr observed that plaintiff was essentially homebound because of her anxiety, and he opined that plaintiff's prospects would improve if she increased her activity level, took a more active role in her own care, and improved her overall health. He recommended vocational rehabilitation with Steven H. Porter, PhD. Plaintiff does not challenge the ALJ's consideration of Derr's opinions.

Porter, a rehabilitation psychologist, met with plaintiff in the summer of 2010. Porter observed that plaintiff was not consistently compliant with his treatment recommendations and he opined that plaintiff could successfully hold employment. He completed questionnaires solicited by plaintiff's attorney relating to both her physical and mental capacities, in which he opined that plaintiff had unlimited or very good abilities in all areas for unskilled work, except in maintaining attendance and performing at a consistent pace, in which plaintiff had a limited but satisfactory ability. R. 293-94. The ALJ gave significant weight to Porter's opinions, except that he discounted Porter's questionnaire response that plaintiff's impairments would cause her to miss two days per month. Plaintiff challenges the ALJ's rejection of Porter's opinion about her likely absences.

Plaintiff received mental health care from the Crawford County Human Services Department. Her initial assessment was performed by Irv Balto, MSW, LCSW. Balto diagnosed plaintiff with post-traumatic stress disorder, panic disorder with agoraphobia, and depressive disorder, indicating that her symptoms were in the moderate range. The ALJ gave significant weight to Balto's opinions, which plaintiff does not challenge.

Plaintiff reported falling in July of 2011, exacerbating her back problems. Neurosurgeon Michael Ebersold, MD, examined plaintiff in August of 2011, when he observed a large

3

extruded disc at L4-L5 on the left side and he recommended surgery which he performed on September 9, 2011. After the surgery, plaintiff reported to Ebersold that she had a seventy-five percent improvement in her symptoms. Ebersold indicated that she would likely experience continued improvement in her back over the next six months. The ALJ gave controlling weight to Ebersold's opinions that she had experienced substantial improvement after the September 2011 surgery, and that she would continue to experience improvement in the six months after surgery. Plaintiff does not challenge the ALJ's assessment of Ebersold's opinions.

During much of 2010 and 2011, plaintiff was seen by Martin J. Oates, MD, who had become plaintiff's primary care provider. On August 22, 2011, Oates completed a questionnaire in which he assessed the claimant as being able to lift twenty pounds occasionally, ten pounds frequently, and that she could sit for forty minutes at a time and stand for twenty minutes at a time. R. 531-32. Oates opined that plaintiff would need six unscheduled breaks of up to ten minutes each day. But, significantly, he opined that her symptoms would not cause her to be absent from work more than two days per month. The ALJ gave significant weight to the majority of Oates's opinions, but he discounted Oates's restriction to no more than two hours sitting per day, in large part because the September 2011 surgery had improved plaintiff's symptoms. Plaintiff challenges the ALJ's assessment of Oates's opinion of her physical functioning.

Oates also prepared a two-page Mental Function Questionnaire on August 22, 2011, in which he indicated that plaintiff had marked limitations in her ability to understand, remember, and carry out simple instructions and maintain attention. R. 533-34. He also opined that plaintiff *would* be absent from work two or more days per month because of her mental symptoms and that she would therefore have difficulty sustaining regular employment on a full-time basis. The ALJ gave little weight to Oates's mental function opinions because they

4

concerned issues outside his area of expertise and they were inconsistent with other evidence of record, particularly the assessments of Balto and Porter. Plaintiff also challenges the ALJ's assessment of Oates's opinion of her mental functioning.

The record contains assessments by two state agency medical consultants. Syd Foster, DO, provided a Physical Residual Functional Capacity Assessment dated August 5, 2010, and Philip Cohen, MD, provided one dated November 29, 2010. Both consultants offered opinions that plaintiff had moderate physical limitations, to which the ALJ gave significant weight. The record also contains assessments by two state agency psychologists, Kyla King, PsyD, and Kenneth Clark, PhD. King and Clark acknowledged that plaintiff's symptoms caused moderate limitations in her mental and social functioning, but they both opined that plaintiff could function adequately in the workplace. The ALJ accorded weight to Clark and significant weight to King, determinations that plaintiff does not challenge.

The ALJ considered plaintiff's own testimony, and that of J.H., her significant other, with whom she lives. The ALJ gave credence to statements by plaintiff and her significant other concerning her activities of daily living. However, the ALJ also discounted their credibility because of acts of dishonesty. The ALJ noted that J.H. had stolen plaintiff's pain medications, and that plaintiff had filed for and received unemployment benefits during the period of her disability, which would have required her to certify that she was willing and able to accept employment during the time she alleges complete disability. The ALJ noted several incidents in the record in which plaintiff failed to comply with her providers' recommended courses of treatment. Plaintiff does not challenge the ALJ's assessment of her credibility or that of J.H.


## C. The Administrative Hearing and Decision

On September 16, 2011, the ALJ held a 60-minute hearing during which he took testimony from plaintiff and a vocational expert, Spencer Mosley.

The ALJ asked plaintiff about her work history, her daily activities, and her physical and mental limitations. Plaintiff testified that she suffered from back pain that was not effectively controlled by drugs, and that prevented her from sitting or standing for extended periods. She also testified that she has memory problems, problems in maintaining attention, problems in following instructions, and anxieties that make it difficult for her to be around people or adapt to change.

The ALJ posed a series of hypotheticals, seeking the vocational expert's testimony concerning jobs available to a worker with plaintiff's residual functional capacity. The first set of limitations was: sedentary work; with the option to sit or stand at will; at which the worker might be off-task ten percent of the time. The vocational expert identified available occupations as surveillance system monitor, order clerk, and sports equipment machine tender. The ALJ added the further limitation of simple, repetitive, and routine tasks. The vocational expert testified that the same occupations would be available with that limitation. The ALJ added further restrictions: free of fast-paced production; only simple work decisions; few work changes; only occasional interaction with the public. The vocational expert testified that only the surveillance system monitor position would be available for that set of limitations.

Plaintiff's attorney added additional limitations: the freedom to walk five minutes out of every thirty; the freedom to take several unscheduled breaks each day; and the ability to be absent more than two days each month. The vocational expert testified that any of these additional limits would preclude employment.

The ALJ issued a written decision on November 14, 2011. The ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2010. Plaintiff had not engaged in substantial gainful activity since April 7, 2010. Plaintiff has severe impairments: degenerative disc disease with mild degenerative facet disease; affective disorder; anxiety disorder; and obesity. Plaintiff does not meet the requirements of a listed impairment. Plaintiff has the residual functional capacity to perform sedentary work except that plaintiff requires a sit/stand option at will; she may be off-task ten percent of the work day; and she is limited to simple, routine, and repetitive tasks. Plaintiff is unable to perform past relevant work, but there are jobs in significant numbers in the economy that plaintiff can perform. Accordingly, the ALJ concluded that plaintiff was not under a disability from April 7, 2010, through November 14, 2011, the date of the decision.

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence

7

before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Plaintiff contends that the ALJ failed to comply with the "treating source rule," improperly rejecting parts of the opinions of Oates, Porter, and Grenier, leading to a faulty determination of plaintiff's residual functional capacity. The gist of plaintiff's argument is that Oates, Porter, and Grenier each opined that plaintiff would be absent from work more than two days per month. If these opinions about her absences had been credited, plaintiff contends, the ALJ would have had to find that plaintiff cannot hold gainful employment and the conclusion of disability would be unavoidable. After reviewing the record, the court concludes that the ALJ appropriately weighed the opinions of these three providers, along with three other treating providers, and four state agency providers. The ALJ adequately explained his reasons for discrediting aspects of these providers' assessments.

The "treating source rule," derived from 20 C.F.R. § 404.1527(c)(2), "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this case, the ALJ correctly determined that the opinions of Oates, Porter, and Grenier were not entitled to controlling weight. First, the opinions about plaintiff's absences were expressed in fill-in-the-blank responses to form questions posed by plaintiff's attorney. Although

8

there is no per se rule discrediting such opinions, in this case there is nothing in the questionnaires completed by the providers to indicate what medically acceptable clinical and laboratory diagnostic techniques support their predictions about plaintiff's work absences. Second, and more important, the opinions about plaintiff's work absences were not consistent with other evidence of record. Thus, the ALJ correctly determined that the opinions of Oates, Porter, and Grenier were not entitled to controlling weight.

It is the ALJ's task to weigh the opinions of treating providers appropriately. When, as here, an ALJ "chooses to reject a treating physician's opinion [he] must provide a sound explanation for the rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). That explanation must allow a reviewing court to conclude that the ALJ actually "weighed the merits of [a source's] opinion [and] engaged in the careful analysis required by the regulations and case law." *Id*. To properly frame the ALJ's analysis, the regulations provide a checklist of factors to facilitate his legal reasoning and explanation of the evidence. Such factors determine what weight the ALJ affords to the medical opinions in the record, providing transparency in the ALJ's reasoning for judicial review. *See* SSR 06-3p; § 404.1527(c). On appeal, the Commissioner cannot cure deficiencies in the ALJ's explanation by supplying her own evaluation of a medical opinion, nor is it appropriate for this court to engage in its own analysis of the factors—"what matters are the reasons articulated *by the ALJ*." *Jelinek*, 662 F.3d at 812 (original emphasis).

In this case, the ALJ accepted much of the evidence provided by Oates, Porter, and Grenier. As explained below, the ALJ provided sound reasons for discounting their opinions about plaintiff's absences and a few other minor aspects of their opinions. Although the ALJ did not in every case mechanically walk through all of the § 404.1527(c) factors, he adequately explained those factors that were material to his decision.

9

**A. Dr. Oates**

The ALJ gave significant weight to the majority of Oates's opinions provided in response to the Physical Assessment Questionnaire. R. 17. But the ALJ found that Oates's restriction to two hours of sitting per day is not consistent with the other evidence of record. That evidence includes plaintiff's own reports of her tolerance for sitting, which she reported to Grenier in her physical activities addendum. R. 229. Plaintiff's self-reports were also noted and adopted in the evaluations of state agency medical consultants Foster and Cohen. The ALJ also found that the two-hour sitting restriction was inconsistent with the record in light of plaintiff's reported improvements after the September 9, 2011, surgery, after Oates completed his physical assessment questionnaire on August 22, 2011. Although the ALJ discounted the two-hour sitting restriction, he nevertheless took into consideration Oates's requirement that plaintiff be allowed a sit/stand option and that she be able to alternate sitting and standing so long as it requires her to be off-task no more than ten percent of the time. The ALJ's rejection of the two-hour sitting limitation is well explained, and the ALJ gave the remainder of Oates's opinions about plaintiff's physical limitations significant weight.

Oates also provided a questionnaire relating to plaintiff's mental functioning. The ALJ gave little weight to this questionnaire because Oates's opinions are not consistent with the evaluations of plaintiff's mental functioning completed by Balto and Porter. Balto and Porter opined that plaintiff was capable of a relatively broad range of activities and employment, whereas Oates opined that she was not. The ALJ correctly points out that Oates is a family practitioner and not a psychiatrist or other mental health specialist, unlike Balto and Porter. The specialization of a provider is a relevant consideration under § 404.1527(c) if the provider's opinion is not given controlling weight. The ALJ also pointed out that the timing of Oates's mental questionnaire, August 22, 2011, was before plaintiff's September surgery and that her

physical improvements may affect her mental health. Although the ALJ did not walk through each of the § 404.1527(c) factors, the ALJ adequately explained the factors that were material to his evaluation.

In sum, most of Oates's opinions were amply credited by the ALJ. Oates's conclusory opinion that plaintiff would likely be absent two days or more per month due to her mental impairments was properly discounted, and the ALJ's reasons for doing so were adequately explained.

**B. Dr. Porter**

Porter completed a six-page questionnaire on plaintiff's mental functioning on June 10, 2010. R. 291-96. On the same date, he completed a five-page questionnaire on plaintiff's physical functioning. R. 297-301. The ALJ gave significant weight to Porter's opinions with the exception of the opinion that plaintiff's impairments might cause her to miss two or more days of work per month.

Plaintiff contends that the ALJ erred by completely disregarding Porter's Physical Function Questionnaire, but plaintiff's argument does not reflect an accurate view of the record. The physical limitations reflected in Porter's questionnaire are generally reflected in the ALJ's residual functional capacity assessment. The ALJ rejected only portions of the information provided in the Physical Function Questionnaire; specifically, the opinion that plaintiff would be absent about three days per month. The other restrictions on how long she could sit, the fact that she would need to stand occasionally, and restrictions on the weight that she could lift are all reflected in the residual functional capacity assessment. The ALJ correctly pointed out that Porter's contemporaneous treatment notes from his sessions with plaintiff indicate that there were no physical impediments to her maintaining full-time work. R. 416. The ALJ appropriately

explained his rejection of Porter's opinion concerning plaintiff's likely absences due to her physical condition.

As for Porter's Mental Function Questionnaire, he reported that plaintiff had generally unlimited or very good abilities needed to do unskilled work. He indicated that plaintiff had a limited but nevertheless satisfactory ability to maintain regular attendance and be punctual and to perform at a consistent pace. However, Porter indicated in response to Question 11 that plaintiff would miss about two days per month as a result of her mental impairments. Porter qualified his response with a question mark, and thus it was appropriate for the ALJ to question this opinion as well. Viewing all Porter's evidence, and the evidence that Porter himself considered, it seems clear that Porter's opinion was that plaintiff had a good chance of maintaining employment and that it would be a good thing for plaintiff to do so.

As with Oates, the ALJ credited nearly all of Porter's opinions with the exception of his conclusory opinion that plaintiff would miss about two days per month of work. The ALJ adequately explained his reasons for discounting this aspect of Porter's opinion.

**C. Dr. Grenier**

Grenier completed a Lumbar Spine Residential Functional Capacity Questionnaire, based on her treatment of plaintiff between December 15, 2009, and May 10, 2010. Grenier opined that plaintiff would be absent from work more than four days per month due to back pain. The ALJ gave Grenier's opinions little weight for several reasons, the most important of which is that Grenier's opinion was essentially obsolete. Grenier last saw plaintiff in May of 2010, and completed the report on June 1, 2010. But in September of 2011, plaintiff had surgery to further repair her disc problem, and that surgery was successful. The ALJ adequately explained his reasons for discounting Grenier's opinions.

CONCLUSION

Plaintiff's main argument is that the ALJ should have credited the responses of Oates, Porter, and Grenier to the various functional capacity questionnaires created by plaintiff's attorney. Although there is no per se rule requiring the ALJ to discount information provided by such checkbox responses, it was reasonable for the ALJ to weight the treatment notes of the providers more heavily than brief questionnaire responses. In this case, plaintiff's own providers opined that she had the ability to perform unskilled work, although three of those providers had misgivings about her attendance. Given that Porter questioned plaintiff's commitment to her own treatment, it was reasonable for the ALJ to doubt that plaintiff's potential attendance problems were caused by medically determinable impairments. Plaintiff contends that the ALJ has cherry-picked the evidence to support his residual functional capacity finding. But it is plaintiff who has cherry-picked the evidence. The record, as a whole, supports the ALJ's determination of plaintiff's residual functional capacity, and the ALJ's decision adequately explains the reasons underlying it.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Amy Rodenberg's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 26th day of August, 2014.

BY THE COURT:
/s/

JAMES D. PETERSON
District Judge